IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANAZIA WATSON,

     Plaintiff,

    v.

CHIME SOLUTIONS, INC. and
VXI GLOBAL SOLUTIONS, LLC,

     Defendants.

CIVIL ACTION FILE NO.

1:24-cv-3243-TWT-JKL

## **NON-FINAL REPORT AND RECOMMENDATION**

This employment discrimination case is before the Court on Defendant VXI Global Solutions, LLC's ("VXI") motion to dismiss Plaintiff Janazia Watson's amended complaint. [Doc. 23.] For the reasons that follow, it is **RECOMMENDED** that the motion be **DENIED**.

The case is also before the Court on the Court's order of October 30, 2024, directing Plaintiff to either file proof of service as to Defendant Chime Solutions, Inc. ("Chime") or show cause for the failure to serve Chime. [Doc. 19.] Because Plaintiff has not perfected service on Chime, and indeed asks the Court to dismiss Chime, it is **RECOMMENDED** that this action against Chime be **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m).

## I.     BACKGROUND

On July 23, 2024, Plaintiff filed this action against Chime and VXI, alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C.A. § 12112(a); and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k).  [Doc. 1.]  The next day, she filed an amended complaint as a matter of right, which is the operative complaint in this action.  [*See* Doc. 5.]  Plaintiff never served Chime because she discovered that it was administratively dissolved in September 2024.  [Doc. 22 at 2-3.]

The amended complaint alleges the following.  In August 2021, Plaintiff began work as a customer service representative at Chime's headquarters in Morrow, Georgia.  [Doc. 5 ¶¶ 3, 16.]  In October 2022, she discovered she was pregnant.  [*Id.* ¶ 18.]  Her pregnancy was "high-risk" and required the care of three separate medical specialists.  [*Id.* ¶ 19.]  In December 2022, she "began the process of applying for intermittent FMLA leave" so that she could have flexibility to schedule and attend necessary medical appointments.  [*Id.* ¶ 20.]  Around February 10, 2023, Y'Londa Jackson, an HR generalist for Chime, told Plaintiff that her request for intermittent FMLA leave would be granted, but only

to attend one doctor's appointment per month, beginning retrospectively on October 28, 2022 and continuing through March 12, 2023. [*Id.* ¶¶ 21-22.] Due to ongoing pregnancy complications, Plaintiff's approved intermittent FMLA leave was expanded to one excused doctor's visit biweekly from March 13, 2023 through May 20, 2023. [*Id.* ¶ 24-25.] Then, as her due date approached, Plaintiff applied for and was approved for continuous FMLA leave beginning May 22, 2023 through July 17, 2023, a period that would cover the first months after childbirth.[1] [*Id.* ¶ 26.]

Plaintiff's doctor elected to schedule a C-section for May 15, 2023, and advised Plaintiff to start her maternity leave on April 28, 2023. [Doc. 5 ¶ 27.] Plaintiff related this to Jackson (Chime's HR generalist), who told Plaintiff she could start consecutive FMLA leave early but that she would need to continue making health insurance payments and that her return-to-work date would be July 10, 2023. [*Id.* ¶ 28.]

Around June 15, 2023, Plaintiff received a separation notice from the Georgia Department of Labor "on behalf of Chime" that stated Plaintiff had

---

[1] Meanwhile, in early spring 2023, Plaintiff "began conversations with Chime about taking additional intermittent FMLA leave to attend her autistic son's telehealth therapy session for two hours per week." [Doc. 5 ¶ 23.] Chime denied the request. [*Id.*]

voluntarily resigned on April 28, 2023.  [Doc. 5 ¶ 29.]  Plaintiff, however, had not resigned and intended to return to work at the end of her FMLA leave.  [*Id.* ¶ 30.] She actually had received correspondence from Chime around May 3, 2023, about her benefits contributions and her updated return-to-work date of July 10, 2023.  [*Id.* ¶ 31.]  Believing the termination notice to have been "some kind of administrative error," Plaintiff attempted to log into her work computer on July 10, 2023 (some 25 days after receiving the separation notice), only to find she had been locked out of the system.  [*Id.* ¶ 32.]

Plaintiff alleges that around March 10, 2023, XVI acquired Chime.  [Doc. 5 ¶ 6.]  After the acquisition, and for the duration of Plaintiff's remaining term of employment, Chime continued "to maintain its own corporate identity."  [*Id.; see also id.* ¶ 33 (alleging that "Chime continued for some undetermined period of time to operate under its own corporate identity").]  Indeed, Plaintiff's separation notice that she received from the DOL listed Chime as her employer, and through at least 2023, Plaintiff maintained contact with Chime's HR generalist.  [*Id.* ¶ 34.]

According to Plaintiff, for the final three months of her employment, "both Chime and VXI functioned as joint employers" and "VXI exercised substantial, direct, and immediate control over the essential terms of [Plaintiff's] employment, including in relevant part her exercise of her right to leave and benefits and her

ultimate termination." [Doc. 5 ¶ 35.]

On August 21, 2023, Plaintiff filed a charge of discrimination against Chime alleging disability discrimination and retaliation and pregnancy-based discrimination. [Doc. 5 ¶ 13; Doc. 5-1.]

Based on Defendants' actions, Plaintiff asserts four claims: (1) Defendants improperly interfered with her rights under the FMLA by terminating her employment while she was on leave and depriving her of her rights under the FMLA; (2) Defendants retaliated against Plaintiff in violation of the FMLA by terminating her employment for exercising her FMLA rights; (3) Defendants discriminated against her in violation of the ADA by terminating her employment based on her need to take an extended period off work based on a physical impairment (pregnancy complications); and (4) Defendants unlawfully terminated her employment in violation of the Pregnancy Discrimination Act. [Doc. 5 ¶¶ 40-60.]

On November 20, 2024, VXI moved to dismiss the amended complaint. [Doc. 23.] VXI argues that Plaintiff has not adequately pled facts that plausibly suggest VXI was her "employer" for purposes of the FMLA, the ADA, or Title VII. [*Id.* at 5-8.] Relying on a declaration from an in-house lawyer, Aileen Tang, in which she summarized the asset purchase agreement with Chime and a VXI

subsidiary, VXI also argues that it merely acquired the assets of Chime, but did not assume liability for employment-related matters and did not agree to provide for continued employment of Chime's employees.  [*Id.* at 8-9; *see also* Doc. 23-1 (Declaration of Aileen Tang).]

In response, Plaintiff contends that the allegations are sufficient to permit the reasonable inference that VXI was a joint employer with Chime.  [Doc. 25 at 6-8.]  Plaintiff also objects to Ms. Tang's Declaration on the grounds that it is evidence outside the four corners of the complaint and, thus, cannot be considered on a motion to dismiss without converting the motion into a motion for summary judgment.  [*Id.* at 4-6.]

VXI did not file a reply and the time for doing so has passed.  The motion is now ripe for resolution.

Meanwhile, on October 30, 2024, the Court ordered Plaintiff to show cause under Rule 4(m) why Plaintiff had not served Chime.  [Doc. 19.]  In response, Plaintiff represented that her process server attempted to serve Chime through its registered agent on August 4, 2024, but was unable to do so because Chime had purportedly vacated the premises. [Doc. 22 at 2.] Counsel then subsequently learned that Chime had been administratively dissolved on September 13, 2024, after Plaintiff had attempted service.  [*Id.* at 3.]  Based on these circumstances,

Plaintiff suggests that Chime no longer exists, but alternatively asks that if Chime does exist, it be dismissed without prejudice.  [*Id.*]

## II.   VXI'S MOTION TO DISMISS

### A.   Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do."  *Id.* In evaluating a complaint, courts should disregard any allegations that are mere legal conclusions.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (discussing *Iqbal* and *Twombly*).  Further, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

### B.    Discussion

As an initial matter, Plaintiff's objections to the Declaration of Aileen Tang are well-taken.  The declaration simply summarizes a contract, but that contract has not been presented to the Court, nor has its authenticity been established, and the Court cannot say that the contract bears on the merits of the motion to dismiss.  Accordingly, the Court has not considered the declaration in its analysis.

Generally speaking, claims asserted pursuant to Title VII, the ADA, or the FMLA may "only be brought by an employee against [her] employer."  *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016).[2]  Indeed, it is a bedrock

---

[2] While *Peppers* and many of the cases cited in this report and recommendation are based upon Title VII, the "ADA's definition of 'employer' is similar to that under Title VII."  *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007).  "As a result, the ADA adopts in large part the Title VII case precedent, and courts have used the Title VII cases as a guide for determining employer liability under the ADA."  *Robinson v. Wellstar Atlanta Med. Ctr., Inc.*, No. 1:19-CV-2244-SDG-JFK, 2019 WL 12448605, at *8 (N.D. Ga. Nov. 4, 2019) (cleaned up; citations omitted), *report and recommendation adopted*, 2020 WL 10227468 (N.D. Ga. Jan. 21, 2020).  Courts in this Circuit have also taken the same tack with regard to FMLA claims.  *See Dixon v. Clayton Cnty. Bd. of Health*, No. 1:23-CV-2730-WMR-RDC, 2024 WL 1009523, at *3-4 (N.D. Ga. Jan. 31, 2024) (applying single/integrated and joint employer tests upon motion to dismiss FMLA claims); *Braun v. Cadence Healthcare Sols., LLC*, No. CV419-101, 2022 WL 3570344, at *7 (S.D. Ga. Aug. 18, 2022) (same); *Taylor v. Texaco, Inc.*, 510 F. Supp. 2d 1255, 1262-63 (N.D. Ga. 2007) (recognizing that joint employers may be liable under the FMLA); *Cruz-Lovo v. Ryder Sys., Inc.*, 298 F. Supp. 2d 1248, 1252 (S.D. Fla. 2003) ("The regulations interpreting the FMLA provide two theories under which multiple entities can be deemed the 'employer' of an employee:  the 'integrated employer' theory and the 'joint employment' theory.").  Accordingly, the Court

principle of corporate law "deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Hilliary v. FlightSafety Int'l, Inc.*, No. 1:17-CV-00999-AT-WEJ, 2017 WL 11316735, at *5 (N.D. Ga. Oct. 20, 2017) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) (marks omitted), *report and recommendation adopted*, 2017 WL 11316993 (N.D. Ga. Nov. 14, 2017).

Even so, a shareholder, investor company, or otherwise affiliated entity may be liable under a "joint employer" theory of liability, depending on "the degree of control an entity has over the adverse employment decision on which the [employment] suit is based." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1300 (11th Cir. 2021) (quoting *Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998)) (quotation marks omitted). Courts generally determine whether companies operate as "joint employers" by evaluating the degree to which a parent company (or otherwise related entity) controls: (1) the means and manner of the plaintiff's work performance; (2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the plaintiff's compensation. *See Llampallas*, 163 F.3d at 1245. The focus of the analysis is "on the degree of

---

will analyze the issue of VXI's liability under Title VII, the ADA and the FMLA together.

control an entity has over the adverse employment decision on which the Title VII suit is based." *Id.* at 1244-45.

Under the "integrated enterprise"[3] theory, meanwhile, "two ostensibly separate entities [that] are 'highly integrated with respect to ownership and operations,'" will be equally liable for an employee's claims if they operate as a "single employer," in view of the following four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Lyes*, 166 F.3d at 1341. And while the "integrated enterprise" analysis looks generally toward the relationship between the corporate entities, the "common focus"—as it is in the joint employer analysis—is on "determin[ing] who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* at 1345 (collecting cases); *see also Llampallas*, 163 F.3d at 1244-45. In any event, to hold a parent company liable, there must be a "significant departure

---

[3] The integrated enterprise test is also referred to as the "single employer" theory of liability. *Peppers*, 835 F.3d at 1298 (citing *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999)). This test is also known as the "economic realities test," as promulgated by the National Labor Relations Board and adopted by the Eleventh Circuit. *See Woldu v. Hotel Equities, Inc.*, No. 1:09-CV-0685-HTW-CCH, 2009 WL 10668443, at *9-10, 12 (N.D. Ga. Sept. 18, 2009), *report and recommendation adopted*, 2010 WL 11507854 (N.D. Ga. Mar. 18, 2010).

from the ordinary relationship between a parent and its subsidiary . . .  [that] would permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions."  *Roberts v. Fulton Cnty. Ry., LLC*, No. 1:07-CV-2416-TWT, 2008 WL 5115053, at *4 (N.D. Ga. Dec. 2, 2008).

Here, Plaintiff pleads enough facts, barely, to plausibly show that VXI could be held liable for her alleged claims, whether under the joint employer or integrated enterprise theory.  She asserts that VXI "exercised substantial, direct, and immediate control over the essential terms" of her employment after VXI acquired Chime in March 2023.  [Doc. 5 ¶ 35.]  She further asserts that VXI had control over her benefits, leave, and termination, suggesting that VXI or its agents were decisionmakers or exercised some control over the alleged adverse employment actions taken against her, which is the focus of both the joint employer and integrated enterprise inquiry.  [*Id.*]; *See Lyes*, 166 F.3d at 1345; *Llampallas*, 163 F.3d at 1244-45.  In addition, the alleged adverse actions did not occur until after VXI's acquisition of Chime,[4] which further allows the court to draw the reasonable inference that VXI may be liable for the misconduct alleged.

---

[4] As already noted, VXI denies that it acquired ownership of Chime, but the Court must accept Plaintiff's allegations as true at this stage.  *See Iqbal*, 556 U.S. at 678.

[Doc. 5 ¶¶ 29-33]; *see also Iqbal*, 556 U.S. at 679 (noting that whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense).  The amended complaint also makes clear that Plaintiff took leave the month after the alleged acquisition and, therefore, may not have personally been privy to details about how VXI exercised control over employment matters.  [*See* Doc. 5 ¶¶ 27-35]; *see also Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 423 (S.D.N.Y. 2022) (finding it "reasonable to conclude" at the motion to dismiss stage that the plaintiff lacked "access to information that could further elucidate the specific relationship between" alleged joint employers).

To be sure, the amended complaint leaves much to be desired in terms of detailed factual allegations.  But whether VXI can be liable as a joint employer (or under a different theory) is essentially a factual question best left for another day. *See EEOC v. Princess Martha, LLC*, 705 F. Supp. 3d 1353, 1368 (M.D. Fla. 2023) (noting that the "fact-intensive nature of the joint employer theory makes it 'ill-suited for consideration on a motion to dismiss'"); *MacMartin v. Marine Mgmt. Servs., Inc.*, No. 3:22-CV-610-BJD-LLL, 2023 WL 9469635, at *6 (M.D. Fla. Feb. 7, 2023), *report and recommendation adopted as modified*, 2023 WL 9469397 (M.D. Fla. Mar. 21, 2023) (noting that whether a defendant qualified as plaintiff's employer

could be argued at summary judgment); *Key v. Hyundai Motor Mfg., Ala., LLC*, No. 2:19-CV-767-ECM, 2021 WL 3909663, at *8 (M.D. Ala. Aug. 31, 2021) (noting that courts "usually determine whether a defendant is a joint employer at the summary judgment stage because such a determination requires a factual determination); *Cantrell v. Nationwide Mut. Ins. Co.*, No. 1:19-CV-05514-ELR-RDC, 2020 WL 10056806, at *6 (N.D. Ga. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL 10056400 (N.D. Ga. Nov. 30, 2020) (explaining that whether the joint employer theory applies is essentially a factual question).  Under the circumstances of this case, the allegations contained in Plaintiff's amended complaint plausibly suggest (albeit barely) that VXI could be considered her "employer" or liable for Chime's actions under some theory of liability.  Thus, it is **RECOMMENDED** that VXI's motion to dismiss be **DENIED** without prejudice to it renewing its arguments about joint employment at summary judgment.

### III.    FAILURE TO SERVE CHIME

Rule 4(m) of the Federal Rules of Civil Procedure provides that if a defendant is not served within ninety days of the date the complaint is filed, a court should dismiss the case without prejudice unless the plaintiff provides good cause for the failure to serve.  As noted, Plaintiff has advised the Court that

she did not perfect service on Chime because its registered agent's address was no longer valid.  [Doc. 22 at 2.]  She also states that Chime appears to "no longer exist[]" because it has been administratively dissolved.  [*Id.* at 3.]  She further contends if Chime does exist, it should be dismissed without prejudice.  [*Id.* at 3 n.1.]  The crux of Plaintiff's position, as the Court understands it, is that Chime does not exist because it was administratively dissolved and that service of process would be futile.  Plaintiff is incorrect on both fronts.

First, Plaintiff seems mistakenly to believe that administrative dissolution is tantamount to non-existence.  Not so. The Georgia Business Corporation Code states that "[a] corporation administratively dissolved ***continues its corporate existence*** but may not carry on any business except that necessary to wind up and liquidate its business and affairs."  O.C.G.A. § 14-2-1421(c). (emphasis added).  The code further provides that "administrative dissolution of a corporation does not terminate the authority of its registered agent."  *Id.* § 14-2-1421(d); *see John C. Wilson Co. v. Regions Bank*, 352 Ga. App. 624, 625 (2019) (holding that administratively dissolved corporation was properly served through its registered agent).  Underscoring that administrative dissolution is temporary, a corporation generally has five years to obtain "reinstatement" after dissolution.  O.C.G.A. § 14-2-1422; *see In re Kimball*, 667 B.R. 487, 490-91 (Bankr.

N.D. Ga. 2025) (describing under analogous circumstances that administrative dissolution of a limited liability company is "a temporary state that is intended to be resolved by the dissolved entity curing the matters that led to its dissolution").

In addition, contrary to Plaintiff's suggestion otherwise, she could have timely perfected service on Chime, even though its registered agent purportedly relocated and even though it was administratively dissolved. Rule 4(h) of the Federal Rules of Civil Procedure provides that service of process may be made on a corporation either "in the manner prescribed by Rule 4(e)(1) for serving an individual"; or "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1), meanwhile, states that service can be effected "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Georgia law, a plaintiff accomplishes service on a corporation by delivering a copy of the summons and complaint "to the president or other officer of the corporation, secretary, cashier, managing agent, or other agent thereof." O.C.G.A. § 9-11-4(e)(1). If service cannot be made in that manner,

Georgia law authorizes substitute service on the Secretary of State, along with a certification that the plaintiff has attempted service, that service could not be effected, and that plaintiff forwarded by registered mail the summons and complaint to the last known address of the corporation's office or agent. O.C.G.A. § 9-11-4(e)(1). There is no indication that Plaintiff availed herself of this substitute method of serving Chime.

In sum, it appears that Chime does still exist, that it was possible for Plaintiff to have served it, and that Plaintiff did not avail herself of the alternative service mechanism set out in O.C.G.A. § 9-11-4(e)(1). For these reasons, dismissal under Rule 4(m) is warranted. But since Plaintiff explicitly requests—in a counseled brief—that Chime be dismissed without prejudice if it does exist, it is **RECOMMENDED** that this action against Chime be **DISMISSED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion to dismiss [Doc. 23] be **DENIED**. The undersigned also **RECOMMENDS** that Defendant Chime be **DISMISSED WITHOUT PREJUDICE**. [*See* Doc. 22.]

16

IT IS SO RECOMMENDED this 12th day of May, 2025.

_____
JOHN K. LARKINS III
United States Magistrate Judge